Uh huh. Yeah. Yeah. Okay. Mhm. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. No. All righty. The next case of the morning is Harmon versus city of Arlington a number 21 0830 and we'll hear first from Miss Rao. Yeah. Good morning, your honors. I may please the court. Davie Rao on behalf of plaintiff's appellants, Woods and Harmon on the afternoon of September 1st, 2018, a city of Arlington police officer pulled over O'Shea Terry and his passenger, Terrence Harmon for an expired registration tag minutes later when Mr Terry attempted to pull away from the traffic stop. Defendant Tran shot him multiple times, but there is no open season on suspects fleeing in motor vehicles. Rather deadly force is constitutional only where the subject poses an immediate risk of serious bodily harm. Viewing the complaint and the video in a light, most favorable to Terry. That test was not met here. Mr. Terry had not committed a dangerous felony or a felony at all there. He had not led officers on a chase and there was no one in the path of the vehicle and defendant Tran had a reasonable alternative available to him. What was that? He could have merely stepped down from the running board and let Mr. Terry drive away in Ramirez. The court discusses the reasonable alternatives and in Jackson, the, uh, the court says it's an important part of the deadly force analysis. That's because deadly force must be necessary in order to prevent immediate risk, immediate bodily harm, where, where there is a reasonable alternative that deadly force is not necessary. Um, here defendant Tran could have just stepped down from the vehicle and let Terry drive away. Alternatively, he could have issued warnings that he was considering using deadly force. He said, Hey, Hey, is not a warning. Um, under Garner, Garner says that warnings must be issued where, well, excuse me, when your arm is in the window and I suppose it's being raised automatically and you could crush your arm and also catch him, uh, as, as he was engaging the vehicle to drive off. I mean, gosh, uh, that's indicating enough of an awareness, situational awareness on the officer's part that something can happen. Uh, two points, Your Honor. First, um, on the facts, uh, defendant Tran was holding onto the window, but had free movement of his arm. We see him pulling his arm in and out of the window. And actually the video shows that Terry had rolled his window up all the way yet left the passenger side window down. So he was not intending to raise it up to trap defendant Tran. So that's on the facts, um, on the warning piece, Your Honor, uh, it, uh, in, uh, Wisner, the court explained that the purpose of the warning requirement is to deter someone from continuing their actions and allow them a moment to stop what they're doing. Saying, hey, hey, is not sufficient to meet the warning requirement that deadly force will be used. Uh, what was required is stop or I'll shoot. Um, there was time to issue this warning. The imminence of, of the threat was not sufficient to, um, obviate the need to issue that warning. Um, and so, uh, the speed with which defendant Tran resorted to deadly force in this case, as in trammel, um, undermines any claim he has to the use of that force. Um, in addition to issuing a warning and stepping back from the vehicle, as we've discussed, he could have, um, shot the tires of the vehicle or otherwise, um, which would have otherwise brought the vehicle to a stop. Um, in, uh, in Ramirez and in Jackson, the court discusses the reasonable or the reasonable alternatives as an important part of the analysis. Here, there were reasonable alternatives available to him. So even were we to assume there was, um, a perception of risk, which, uh, I don't think exists, but even if we were to assume it, little provides that the, um, officer's response to that risk is an important part of the analysis. Jackson also talks about deadly force being permissible in that situation for two reasons. One, because the, um, driver had used the vehicle as a weapon. Um, it, and these are the cases where the driver was driving at someone or the officer perceived that someone was in the line of the vehicle. That's not the case here. Second, Jackson talks about situations where, uh, the driver had acted in a volatile manner that, um, led the officer to reasonably perceive they would continue to act in that way. Um, you know, weaving in and out of traffic, driving erratically, um, hitting other cars. Uh, there was no facts here suggesting that, um, Terry had driven dangerously or would continue to drive dangerously. He was pulled over, not for a moving violation, but for an expired registration tag. Well, and then the other officer was running the NCIS checks, I presume, and they, and she had, hadn't she asked, uh, for permission to search the car? She had. The, and that's when they decided to run, drive off. That's right. So, um, in addition also the pot smoke. Yes. Uh, you know, he's, he's operating a vehicle, um, arguably impaired at that point. So I don't know if we can say that he's not a danger behind the wheel. So it's true that, um, the video seems to show, uh, that the officer smelled marijuana smoke emanating from the vehicle. Well, both of them did, and they talked to the suspect about it. Right. But there was nothing, but so even assuming that, um, Terry was, uh, under the influence of marijuana, there was nothing to suggest that his driving would have been substantially impaired by that marijuana to the point where, um, it would have posed an immediate risk to Tran at that point or to the public, um, the imminence of the risk must be substantial and must be enough to justify taking someone's life. And in this situation where even assuming he was under the influence of marijuana, his driving had not, as far as the record reflects, been impacted by that. He was pulled over, not for his driving, but for tags. And so the fact that he may have been under the influence does not appreciably increase the risk on the facts of this case sufficient to justify deadly force where Officer Tran, who was on the curb side of the vehicle, had the reasonable alternative of just stepping down from the vehicle and letting Terry drive away. Um. Why don't you talk about Harmon and how Harmon's Fourth Amendment rights were infringed in this case? So, um, a seizure is a, uh, use of force or a show of authority and then the yielding to that authority. Here, the, the first, um, component, the force or, um, show of authority, was when Tran reached across Harmon and shot the operator of the vehicle. And then Harmon is the one who actually... I didn't understand quite what you say. Were you trying to, were you indicating when Harmon was first seized or when... I'm saying that's when the force happens. Harmon is seized, um, uh, through that show of force and Harmon yields in response to that. He is the one, actually, who has to take his dying friend's leg off the gas pedal and apply the brake manually with his hand in order to bring the car to a stop. So, um, Jamison provides that, um, where, uh, a passenger is able to bring a Fourth Amendment excessive force claim. In that case, the force that was used was a roadblock. Here, it's the applying, uh, it's the shooting of the operator of the vehicle. So the method of force is different, but the analysis is the same. That's consistent with the Supreme Court's decision in Brenlin where it said that, um, a passenger has the right to bring a Fourth Amendment claim challenging the reasonableness of a traffic stop. Um, and so the, so it's clear under that, um... ...use of force is your claim and that happens when the shooting occurs. Uh, the shooting is not directed at Harmon. Um, is excessive force being used as to Harmon at that time? For Fourth Amendment purposes as opposed to reckless conduct under state law? Right. In Flores, it's clear that, um, physical harm to the person is not required to bring an excessive force claim. So Harmon suffered, even though he was not the person to whom force was applied, he suffered psychological injuries as a result of that force. Um, and so he has a, the ability to bring a Fourth Amendment claim. Now, of course, um, as to damages... You're only talking about, you're talking about later steps. Now, as I'm talking about the first step, how does the shooting violate Harmon's Fourth Amendment rights? Not if he was injured or not, not anything else. How does the shooting itself... That's the only excessive force that you're talking about. How is that a violation of Harmon's Fourth Amendment rights? Well, I'd respond that it's the same as in Jamison. Where force is applied to stop a vehicle, the passenger's Fourth Amendment rights have theoretically been violated. And there's a question, then they, then they can bring a Fourth Amendment claim and say that the force was not reasonable in that situation. Um, so that's, um... Two of the cases you both, uh, talk about, uh, PETA and, uh, I forget the other one. Neither one of those were Fourth Amendment cases. They were substantive due process cases or Fourteenth Amendment more generally. Um, what's your best case for an excessive force? Do you have any Fifth Circuit case where a passenger has a Fourth Amendment claim in a situation at all like this? Well, Your Honor, it's right that, um, the cases that the district court relied on... The other one I wasn't thinking of. Right. The bystander cases, um, are substantive due process cases and sort of, and that's what we're saying is that the district court got the analysis wrong by looking at those cases. What the district court should have been looking at is the Fourth Amendment context. And Jameson is the closest case in this circuit where, again, the court said that, um, the passenger has the ability to bring an excessive force case where force is applied to the vehicle, um, which is, um, which is exactly what happened here. By shooting the operator of the vehicle, it's applying force effectively to the vehicle itself. And so as a passenger, Harmon has the ability to bring that, um, a claim. The district court, uh, said he didn't. And so, um, you know, we would ask that, uh, that the court reverse and allow, um, Mr. Harmon's claim to proceed. Of course, if the officer has, uh, qualified immunity as to the shooting to begin with, Harmon's claim goes out the window. That's right. Officer, I'm sorry. Harmon's claim proceeds along the same substantive, um, line as Terry's. So, um, the reasonableness of the stop and the, uh, second prong of the qualified immunity analysis applies equally to, um, Harmon's claim. What I, um, thought, uh, what I quite didn't really understand about all of your briefing is that the Supreme Court has made it clear that in the Fourth Amendment context, uh, shooting is not per se unconstitutional. What is, what is excessive force, according to the Supreme Court, is what is clearly excessive. And even at that level, it is in the eyes of a reasonable officer. Is it not? It is, Your Honor. So, what is your, what is, I just didn't see much about, uh, clearly, well, you're clearly excessive, I guess, is based on your idea that, that in the, uh, in the two seconds that this all occurred, or four or five, uh, this officer should have thought to himself, well, this vehicle's starting to move off while my arm's up here. Maybe I can extract myself and step down before I end up rolling on, rolling on the ground or hitting my head, or getting my foot cut, crushed under the wheel as it goes by. Your Honor, the situations in which the Supreme Court has, um, allowed for deadly force in vehicular flight are those where the suspect is driving, has led police on a speedy chase in Scott v. Harris. It was a, quote, Hollywood stunt. Well, I understand that. But then, then you get to the principle of qualified immunity. And is there anything remotely similar in qualified immunity? And I don't think either party, I think that, uh, Bruce O. is exactly an example of the cases that I was talking about where the person had, had already been fleeing and the manner of their flight suggested that they would continue to be a danger to the public. That's not the case here. The question at the clearly established prong is whether the defendant had fair notice that their, um, behavior was unconstitutional   had fair notice that their, um, behavior was unconstitutional which is that if, uh, you're at the back of or side of a vehicle What about LIDL? I'm sorry, LIDL, Your Honor. Okay, yes, I just should get it. LIDL. Uh, then you can't shoot to kill someone. And in, in LIDL, there was no, no reasonable officer danger and some danger to the public because that suspect had led the officers on a high-speed chase through a residential neighborhood and hit another vehicle. So there, there was some danger to the public. Here, there's no reasonable, reasonably perceived officer danger and no danger to the public. I'll also note, Your Honor, on the second prong of qualified immunity. Um, the Supreme Court has recently, um, uh, uh, explained that in certain circumstances, um, there is an obvious constitutional violation and in Brousseau, the case, um, Your Honor brought up, uh, it said that in certain circumstances Garner itself will clearly establish the law. We submit that this is one of those. Well, those cases, uh, if you're talking about the two that were remanded this year, they both had to do with prison conditions, right? They did, but, uh, this court in, uh, the 2019 en bloc decision in Cole applied the obvious constitutional violation doctrine. Whatever the heck, that, yes, well. But, but Cole, Your Honor, arose in, in the field situation very similar to this one where there was an argument that the subject of the force, uh, was, uh, posed an immediate risk of danger and the court said no on the facts appropriately construed. Um, and at this stage of the litigation, that's not the case. Um, I'd like to reserve the remaining time for rebuttal. All right. Mr. Jeffrey. Okay, please, the court. I'm Jim Jeffrey and I have the honor of representing former officer Bao Tran. And the way we've divided our time, I'm going to address the Fourth Amendment and the qualified immunity issue. Um, Mr. Fugate for the city will address the Fourth Amendment issue as to harm, I'm sorry, will address Harmon's claim that will apply to both parties, uh, defendant and the Monell issues that don't involve Tran. Um, hearing the argument today and reading the briefing, I almost thought we were talking about different cases. The appellees simply ignore and have consistently ignored the record. And the key part of the record is the video that was cited and incorporated into their pleadings and the parties have discussed at great length. And watching the video, I can't think any reasonable person would think Officer Tran didn't immediately apprehend serious danger. And I cite a case that's actually a products liability case, Smith v. Daimler. It's a state law products liability case where the court said it's common knowledge that falling off a moving vehicle is dangerous. And the manufacturers don't have to put a warning in the bed of a pickup to tell you that's dangerous. And here, the undisputed record, the video, shows 47 vehicles pass through the scene from start to finish. The video shows the officers talking to Mr. Terry and he admits to smoking a couple of doobies and they can smell marijuana in the car. But yet, the suggestion is there should not be any reasonable fear that if they let a guy drive off who might be intoxicated under marijuana, that that's in itself not dangerous. And this court's brother's case recognized that even a stopped vehicle with an intoxicated driver behind the wheel is dangerous. And the brother's case cites an out-of-circuit, a Seventh Circuit case, Smith v. Ball State that says as long as the driver that's suspected of being intoxicated is behind the wheel, that's a dangerous situation and they have a right to get the driver out of the vehicle. And so here, after talking to the driver and talking about marijuana and talking about if you smoked them all you won't have any more problems, Mr. Terry decides he doesn't want to be arrested. And he starts to drive off. He ignores Officer Tran who is yelling at him to stop while Terry is seen trying to engage the ignition of the vehicle. And now I hear a suggestion that there should have been some additional warning. Judge Southwick wrote an opinion a few weeks ago that nobody has cited but that case is I'm going to try to pronounce it Batyukova v. Doge. Who knows. And in that case the court recognized that when an officer is present and only a few feet away from someone there's no need for an additional warning when the subject takes immediate action that causes the officer to immediately fear for his own safety. And that's what happened in the Batyukova case and for the record it's at 994 F3rd 717 at page 729 where the court said that. And so here there's no doubt they know Tran's present. There's no doubt they know he's reaching into the window of the vehicle. And there's no doubt that despite that they try to drive off with him clinging to the vehicle. And today we hear that there's reasonable alternatives. He could have just stepped off and let the suspected intoxicated driver drive merrily on his way in Arlington, Texas on a four lane road with 47 cars that pass through the scene during the incident and actually one car comes through the scene seconds before the shooting occurs. That's one suggestion of allegedly reasonable conduct or alternatives. He could have shot the tires. That's the first time I've heard that in the briefing. That's a Hollywood suggestion. That doesn't work. And that's deadly force. And this court's Petivy Rivera case found a Fourth Amendment violation for an officer taking pot shots at a car. And he said he was trying to shoot the tires out. Could have hit the public. Could have hit the occupants of the car. And how does that stop the threat? It doesn't. And the reason for using deadly force is to stop the threat. And the threat was to Tran himself And of course we can't incorporate a video into our brief and I did the next best thing. I had 9 screenshots at page 8 of our brief that show what happened in 2 seconds when Officer Tran fell off the vehicle and of course it was after the shooting. But he faced the same danger if he had fallen off or jumped off before the shooting. And anyone knows, common sense tells you if you fall off of a vehicle you can be hurt seriously or die. And I cited in our briefing cases and a reference to a news article where someone had that happen to them. They were run over by the vehicle they were trying to stop. It was being carjacked. And they jumped on and fell off and were run over. It was a deadly danger. And although the recent Ramirez case and Jackson case talk about considering reasonable alternatives, no one cited in their case. No one cited the Ramirez v. Knowlton case. And that case is at 542 F 3rd 124. It's a 2008 case. And the issue in Ramirez v. Knowlton is not are there reasonable alternatives but whether the officer acted reasonably if he failed to recognize or implement the alternatives. And the only suggested alternatives we've heard are the additional warning which Judge Southwick's recent case said wouldn't be necessary under such facts. Or the Hollywood shoot the tires out. Well that doesn't work. That's unreasonable. And that's as dangerous to other people. And then in the briefing there's a suggestion of firing warning shots. I mean, my goodness. Everybody who lives in this country, especially in Texas, knows that the police departments and sheriffs departments say please don't fire your guns on the 4th of July and New Year's Eve because the falling bullets hurt people. So those are the alternatives. Or step down and let the suspected intoxicated driver drive merrily on his way. Those are not reasonable alternatives. Those are unreasonable. Those are absurd as the alternatives that were rejected in the Jackson v. Gautreaux case that was cited in the Rule 28J brief that was filed about a week or two ago. So then we look at whether the law clearly established to forbid these actions. And Judge Southwark, I think it was your case as well, the unpronounceable name in that case the Batyukova case, there is a suggestion that the obvious case exception might apply. And in that case the court rejected the obvious case exception, the rare obvious case exception, because there was danger to the officer. There was an issue of danger to the officer. We have that here. So there is no obvious case here. In fact, it's obvious that he faced a danger. That's the only obvious thing. And when you look at is there controlling precedent on similar facts as Casella v. Hughes and White v. Pauley from the Supreme Court suggest? No. There's no case where an officer clinging to a car that is driving away and the officer uses deadly force to stop the threat. No case, no court has held that that is forbidden under Fourth Amendment standards. And no court should hold that that is forbidden under Fourth Amendment standards. So if we look at the only cases that are talked about none of those cases in the briefing or here today involve a situation where an officer clinging to a car as it is fleeing and then use deadly force to stop the threat, held that that is forbidden. So there is no case of controlling authority forbidding that conduct under similar circumstances. And yet we have cases out of the same federal district and same division, Fort Worth Division of the U.S. District Court, Northern District of Texas with some similarities. And those cases involve officers holding onto the roof or outside of a vehicle. One is the Woolery case and in that case the officer fired through the roof, killed the driver. There is no Fourth Amendment violation. The Davis v. Romer officer holding onto an SUV standing on a running board as it tried to enter a freeway and he used deadly force and stopped the threat. And an unpublished case this court held that wasn't a Fourth Amendment violation. And so we have no controlling authority forbidding the conduct. I cite some other cases out of the Western District in Austin where similar actions by officers didn't violate the Fourth Amendment. And so there is clearly no violation of clearly established laws where Tran is entitled to qualified immunity. Addressing the Harmon claim briefly that case under qualified immunity there is no case there forbidding Officer Tran's actions. In fact, if Officer Tran had followed the suggestion of firing at the tires we'd have a Petta Rivera situation where all of the occupants of the vehicle were able to state a Fourth Amendment claim. And so here there is no violation of clearly established law applicable to the claim Harmon makes. There's no violation of clearly established law applicable to the claims against Officer Tran on behalf of Terry and there certainly is no Fourth Amendment violation under these facts. And the court has to look carefully as to the and when the court considers the actual facts as contained in the video the court will certainly understand that Officer Tran or any other reasonable officer would have feared imminent risk of serious injury or death. And although I focused in the briefing on the risk to Officer Tran  allowing a potentially intoxicated driver to leave in great haste because he's fleeing after all is a danger to the public. It's absurd to suggest any alternative action and there's no alternative action that's been suggested here today or in the briefing that makes sense or that is reasonable. And I'd finish with about a minute left unless the panel has any questions. I don't think so. Thank you. Mr. Fugate. Good morning. May it please the court. I'm Robert Fugate. I'm here for the city of Arlington. And the issues that I'm going to address are the bystander issue and the Monel issue. What I'd like to address real quick is an issue that was never raised in the district court and that's the second appellate issue that's been brought forth before this court which is creative and it's that by shooting the driver of the vehicle that they somehow seized the passenger of the vehicle. That argument was never raised in the district court. The argument in the district court was also an interesting argument which was about proximity because as the video shows the gun was very close to Mr. Harmon but it was also aimed directly at Mr. Terry and all four shots that were fired struck Mr. Terry. And so I would like to point out two cases to the court which I think are helpful with the new argument which is Landau-Rivera, 906 Fed Second, 791 and Medeiros v. O'Connell which is a second circuit case which is 150, Fed Circuit 164. Those cases are very similar in that they both involve a hijacker who took possession of a vehicle with hostages in the vehicle. In both cases the police shot at the hijacker and accidentally hit the hostage and in both cases the courts found that there was no intent to shoot the hostage and that because there was no intent to shoot the hostage that there could be no fourth amendment claim by the hostage against the police and that of course is consistent with Brower v. County of Inyo, the Supreme Court case which says that to have a seizure you have to have an intentional acquisition and so even if this court were to consider the new argument, we believe that argument would fail. And it is also consistent with all the other cases like Petta and Ledbetter and those cases that divide whether the bystander was in the line of fire and that's to me the original argument that was made in the district court, that's what was so interesting is that the gun was in very close proximity but the standard isn't proximity, the standard is intent and the cases like Ledbetter and Grandstaff and all of them have really turned on whether or not the bystander was in the line of fire and and Mr. Harmon wasn't and that's shown on the video. I'm not saying it makes much difference, it does seem to me this weapon was far closer to Harmon than to the Petta or the Coon situation. You're relying on Tran's good aim and the fact that he may be unbalanced as the car is moving, I find a bit odd that you were saying that you would take the position that Harmon wasn't very much at risk of being in the line of fire. I'm not saying there was at risk and I The line of fire seems to me to be an awkward way for you to position to take with it being, I don't know, inches  And I do believe that's what makes this case interesting and that was the original argument before the district court which in my opinion is not even raised before this court because they switched to the other argument that by shooting the driver you seized everyone in the car and so that's a new argument I don't see the original argument in the brief but I acknowledge completely that this gun was very close to Mr. Harmon and in the video you can see that but I'm not asking you to belabor it you have other things to cover I just wanted to raise I found that particular characterization not clear If I characterized it as not being risky I uncharacterize it Why don't you proceed I mean it is what it is and it's shown on the video So the second thing I would like to address is that in order to try to establish custom they've alleged five incidents and within about the last six weeks federal courts have ruled on two of those incidents and one of them was the Ramirez case that involved Mr. Olivas that was brought before the court on an en banc motion and the court voted I believe 13-4 not to rehear that case the panel in that case found that there was no constitutional violation and another one of our cases that was alleged as an incident the district court has recently found there was no constitutional violation that was the incident involving Tavis Crane and the fifth incident one of the same law firms that represents the plaintiffs in this case has recently filed suit against the city of Arlington and I would like to submit that and ask the court to take judicial notice of it because there's no federal claim against the city of Arlington and the only federal claim against the officer is a 14th amendment substantive due process claim  acknowledged that was an accidental shooting so they've alleged five incidents to try to establish custom two of those have been shown not to involve a constitutional violation the third the plaintiff's own attorney acknowledges that that was an accidental shooting and I will submit that as with the rule 28 J letter and then you know the kind of the final thing I would like to hit is in order to also bolster the custom argument they've cited statistics that for example you know that they say Arlington has the third highest rating of deadly shootings in Texas there's no source data I believe earlier statistics are not probative very much you ask about data in the tax case and that's what we're talking about there's no data there's no sourcing there's no reference there's no methodology and so my question to the court is if you have a raw statement of a statistic with zero background whether they're judicial statistics or shooting statistics same thing and your red light it's on okay so if there are any questions I apologize for my voice I've had some voice damage so it's shaky we're fine thank you thank you Ms. Rao did you did your client did you waive the fourth amendment seizure theory no your honor we didn't that was it was count five is a fourth amendment excessive force claim by Harmon against defendant Tran and then the specific theory is articulated very clearly in the opposition to the motion to dismiss that's at record pages 245 to 47 where Harmon alleged quote he was subject to the initial and ongoing seizure along with Terry so that was properly raised and presented to the district court I'd like to briefly address some of the points that came up in the first part which is reasonable alternatives are an important part of the analysis because deadly force must be necessary to prevent immediate physical harm as to our reasonable alternative that officer Tran stepped down from the vehicle and allow Terry to drive away I heard my friend on the other side say that's not a reasonable alternative because he was suspected of being under the influence of marijuana I want to take a step back and underline how broad of a rule that is it is saying that you can apply deadly force to any person who is suspected of being intoxicated but not to the point where it has demonstrably affected their driving because again I'm not quite sure that I understood the argument to be it wasn't a reasonable alternative for fear that he would be thrown to the ground possibly injure himself or worse be run over by the moving vehicle I thought that was the point of his when we talked about the alternatives I think I think I heard a suggestion that there was a danger to the public posed by this vehicle driving away make it sound like he's arguing that well because if someone's behind the wheel of a stopped car and smells like pot he deserves to be shot well that was how I perceived that argument I didn't gather that from what their comments were I think that to your point about the immediacy of the danger to officer Tran at the motion to dismiss stage viewing the complaint and the video in a light most favorable to Terry that standard is not met here the video shows that Tran fired at Terry the same second the vehicle starts moving it's only moved a few feet and not particularly fast and so and officer Hurley he's car is in the same lane behind the SUV and Tran is protected relative to other cars because he's on the passenger side of the vehicle these facts distinguish this case before you distinguish them let me ask you about those facts again to what extent is it any kind of dispute or what extent is it clear helpfully to you in your view your brief says something along the lines of that you are asserting that he got on the running board to shoot what do we have on the timing from the video or whatever else that did he get on the running board before the vehicle started moving or just how do you play it out that we should look upon this as a situation in which he wasn't in danger because he was on the running board as the vehicle was moving away he had gotten on the running board to stop it from running away yes your honor he steps onto the running board in response to the first time that Terry turned the engine on and starts to roll the windows up we can see this as all one fluid movement he was stepping onto the vehicle in order to get a good angle to shoot Terry to prevent him from driving away it's no different from an officer raising his gun to fire it's all part of one movement he steps onto the vehicle simultaneously reaches for his service weapon and then fires the same second the vehicle starts to move away he had decided a jury could reasonably perceive that he had decided to shoot Terry if he decided to flee but that's not the standard then why would he yell hey hey hey I'm gonna shoot you I mean hey hey hey is an exclamation it is not what you can what one a reasonable person would perceive to be ho ho ho here you go boom see what I mean he did say hey hey hey but actually I think that the way you first articulated the question he didn't say hey hey hey I'm going to shoot it's that second part it's the warning that deadly force will be used if the person does not come into compliance that's what Garner requires and that's what didn't happen here and my friend on the other side cited Brothers Brothers is distinguishable that case the person was heavily intoxicated having just run up a $400 bar tab I was about to address the Davis case just very briefly it's distinguishable if you can brief it your time is up okay we would ask your honors that you reverse the district court thank you okay thank you